# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| **WAYNE JACOB'S SMOKEHOUSE DISTRIBUTION, LLC, JARRED ZERINGUE, and MATTHEW MORELAND,** | * * * * * * | |
| | * | **CIVIL ACTION NO. _____** |
| **Plaintiffs,** | * * | |
| | * | **SECTION _____** |
| **VERSUS** | * * | |
| **CHARLES MUNFORD, FOREST FREE RANGE, LLC, d/b/a Charlie's Sausage and/or Two Run Farm, LOUISIANA FFR, LLC, PATTERSON SLAUGHTER HOUSE LLC, SPRINGFIELD SLAUGHTER HOUSE, LLC, and MUNFORD CONSULTING, LLC,** | * * * * * * * * | **MAGISTRATE _____** |
| **Defendants.** | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

**NOW COME** Jarred Zeringue ("Zeringue") and Matthew Moreland ("Moreland"), individually and on behalf of Wayne Jacob's Smokehouse Distribution, LLC ("WJ Distribution") (collectively, "Plaintiffs"), through undersigned counsel, and file this Complaint as follows:

### Nature of the Action

1.      This action stating claims for (i) violation of the Securities Exchange Act of 1934, 17 C.F.R. §§ 240.10b-5, *et seq.*, (ii) breach of contract, (iii) unfair and deceptive trade practices, (iv) fraud, and (v) unjust enrichment arises from representations made and conduct related to (a) Plaintiffs' business dealings with Charles Munford, (b) the Production Contract dated [insert] between Forest Free Range, LLC and WJ Distribution, and (c) that certain Equity Agreement dated

March 2, 2016, signed by: (v) Zeringue and Moreland, on behalf of WJ Distribution, LLC; (w) Munford, as Manager of Forest Free Range, LLC; (x) Collier Graham; (y) Brian T. Fenelon; and (z) Patterson Fenelon, as Manager of PADAWAKK, LLC.

2.     In addition, Forest Free Range, LLC, Louisiana FFR, LLC, Patterson Slaughter House LLC, Springfield Slaughter House, LLC, and Munford Consulting, LLC, as well as their sole member, Manager, President and Chief of Operations, Charles Munford, are liable to Plaintiffs for the relief sought herein under Louisiana's "single business enterprise" and alter-ego doctrines.

**PARTIES**

3.     Plaintiff Zeringue is an individual of the age of majority who is domiciled in Louisiana.

4.     Plaintiff Moreland is an individual of the age of majority who is domiciled in Louisiana.

5.     Plaintiff WJ Distribution is a limited liability company organized under the laws of the State of Louisiana.

6.     Defendant, Charles Munford ("Munford") is a person of the age of majority who, upon information and belief, is domiciled in Louisiana.

7.     Defendant, Forest Free Range, LLC ("Forest Free Range") is a limited liability company organized under the laws of the State of Mississippi.  Upon information and belief, Forest Free Range operates under an unregistered trade name, Two Run Farm.

8.     Defendant, Louisiana FFR, LLC ("Louisiana FFR") is a limited liability company organized under the laws of the State of Louisiana.  Upon information and belief, Louisiana FFR has one member, Munford, who is domiciled in Louisiana.

9.      Defendant, Patterson Slaughter House, LLC ("Patterson Slaughter House") is a limited liability company organized under the laws of the State of Louisiana.  Upon information and belief, Patterson has one member, Munford, who is domiciled in Louisiana.

10.      Defendant, Springfield Slaughter House, LLC ("Springfield Slaughter House") is a limited liability company organized under the laws of the State of Louisiana.  Upon information and belief, Springfield has one member, Munford, who is domiciled in Louisiana.

11.      Defendant, Munford Consulting, LLC ("Munford Consulting") is a limited liability company organized under the laws of the State of Mississippi.  Upon information and belief, Munford Consulting has one member, Munford, who is domiciled in Louisiana.

## JURISDICTION AND VENUE

12.      This Court is vested with jurisdiction over this Action pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331, in that the Action alleges violations of Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5, promulgated in 1942 pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).

13.      This Court is also vested with supplemental jurisdiction over the alleged state law causes of actions pursuant to 28 U.S.C. § 1367 as they have a common nucleus of operative facts that arise from the same transaction or occurrence as the original claim.

14.      This Court has general and personal jurisdiction over Defendant Munford, as he has engaged in continuous and systematic activities in Louisiana and has purposefully directed his activities at residents of this District, *to wit*, the Plaintiffs, and this litigation results from injuries that arise out of or relate to those activities.  Munford's contacts with Louisiana are imputed to all other named Defendants under an alter-ego theory.  *See Taishan Gypsum Co. v. Gross (In re*

*Chinese-Manufactured Drywall Prods. Liab. Litig.)*, 753 F. 3d 521, 545 (5th Cir. 2014) (analyzing factors in *Green v. Champion Ins. Co.*, 577 So.2d 249 (La. App. 1st Cir. 1991)).

15.     This Court exercises general personal jurisdiction over Defendant Forest Free Range, as Forest Free Range has engaged in continuous and systematic activities in Louisiana. This Court also exercises specific personal jurisdiction over Forest Free Range, as it has purposefully directed its activities at residents of this District, *to wit*, the Plaintiffs, and this litigation results from injuries that arise out of or relate to those activities.   The other named Defendants are likewise subject to the personal jurisdiction and venue of this Court since they constitute a "single business enterprise" under Louisiana law.  *See Bona Fide Demolition & Recovery, LLC v. Crosby Constr. Co. of La., Inc.*, 690 F. Supp. 2d 435, 442–48 (E.D. La. 2010) (analyzing factors in *Green v. Champion Ins. Co.*, 577 So.2d 249 (La. App. 1st Cir. 1991)).

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

17.     On or about February 2015, Zeringue and Moreland organized Wayne Jacob's Smokehouse, LLC d/b/a Wayne Jacob's Smokehouse and Restaurant in LaPlace, Louisiana.  The business smokes and produces high-quality artisan-smoked meats and fresh sausage as well as operates a restaurant.

18.     Zeringue and Moreland also own EAT New Orleans, a restaurant in the French Quarter in New Orleans, Louisiana.  Zeringue is the Head Chef at EAT New Orleans.  Beginning in 2010, Zeringue had ordered food products weekly from Forest Free Range d/b/a Two Run Farm through its representative, Munford.  Forest Free Range, based in Vaughn, Mississippi and owned and operated by Munford, supplied grass-fed, sustainable lamb and beef to Baton Rouge-, Northshore-, and New Orleans-area restaurants and retail markets.

4

19.    In October 2015, Munford approached Zeringue while making his weekly delivery to EAT New Orleans and became aware Zeringue and Moreland owned Wayne Jacobs Smokehouse, but had no mechanism to distribute their smoked products.  Munford represented that he owned five delivery trucks operating six days a week and a client/relationship list of 200 clients in the New Orleans, Baton Rouge, and Northshore areas that he cultivated through Forest Free Range d/b/a Two Run Farm's distribution of lamb and beef.  Munford also represented that Forest Free Range had recently won a $350,000 grant from the State of Louisiana to develop a market to process and sell wild boar which would help control what the State considered to be a "nuisance animal."  Munford also represented that he owned a slaughterhouse in Springfield, Louisiana that was "fast-tracked" to becoming USDA-certified, with meetings and walk-throughs having already occurred.  Ownership of a USDA-certified slaughterhouse would allow nationwide distribution of products.

20.    Munford stated that, due to the abundant resources at his disposal (including, but not limited to, delivery trucks, restaurant and grocery contracts, and a soon-to-be USDA-certified slaughterhouse), Zeringue and Moreland should invest in Forest Free Range so that Zeringue and Moreland would have a vehicle by which they could manufacture and distribute their Wayne Jacob's Smokehouse line of meats.  Munford offered Zeringue and Moreland a 20% equity interest in Forest Free Range in exchange for $320,000.  Munford represented that the $320,000 equity contribution would allow Forest Free Range to build a smoker to facilitate the smoking of Wayne Jacob's Smokehouse meats for distribution as well as allow Munford to start his own line of smoked meats for distribution.  Munford also represented that a portion of the $320,000 would allow Forest Free Range to pay off the company's debt to make the company more stable for expansion.

21.     In considering Munford's offer to buy in to Forest Free Range, Zeringue and Moreland relied heavily on Munford's representations that he had (i) an existing delivery infrastructure and restaurant and grocery contacts for marketing and delivering products, and (ii) a working slaughterhouse that was "fast-tracked" for December 2016 USDA certification.

22.     On or about January 27, 2016, Munford sent to Zeringue and Moreland via e-mail a three-year net earnings projection model that he alleged he produced in consultation with "my original mezzanine debt investors and talking with [Richard "Dick" Molpus'] financial team." Those projections envisioned Wayne Jacobs Smokehouse 2018 gross sales to range between $156,000 to $300,000, and gross sales of meats sold under the "Two Run Farm" tradename to range between $1.5 million and $2 million. After expenses, Forest Free Range's expected 2018 net income would range between $214,000 and $530,000. For projections in 2016 and 2017, the net income relied heavily on $108,000 per year in "wild boar" grant money from the State of Louisiana.

23.     On February 1, 2016, Munford sent an e-mail to Zeringue, Moreland, and four other prospective investors with the subject line: "FFR, LLC Equity (Confidential)." Munford sent the e-mail for the purpose of pitching investment in Forest Free Range. In that e-mail, Munford stated that he consulted with Dick Molpus, Jimmy Josey, and CFO Terrell Winstead of the Molpus Woodlands investment group regarding valuation of the Forest Free Range. Munford valued Forest Free Range at $1.2 million without additional equity investment and $1.6 million with $400,000 of additional equity investment. Munford stated that he had "no specific plans of issuing any more equity in the coming few years, although [he] would reserve the right to do so." Munford made personal promises to Zeringue and Moreland: "I especially promise to honor any

commitment I have made to produce and promote a product designed by one of you, such as Wayne Jacobs sausage."

24.     In February 2016, Zeringue and Moreland organized WJ Distribution under the laws of Louisiana for the purpose of investing in Forest Free Range and distributing Wayne Jacob's Smokehouse products.

25.     On March 2, 2016, Forest Free Range, WJ Distribution, and two other investors entered into an agreement for the purchase of equity in Forest Free Range (the "Equity Agreement"). The terms of the Equity Agreement allowed for Graham, B. Fenelon, and PADAWAKK to swap debt for equity in Forest Free Range and required WJ Distribution to contribute $320,000 in stages over the course of 2016, with the final installment being made on or before December 31, 2016, in exchange for a 20% equity interest in Forest Free Range.

26.     On or about March 2, 2016, WJ Distribution paid its first installment of $32,000 toward the Forest Free Range equity purchase. Munford received the check personally at Wayne Jacob's Smokehouse and Restaurant in LaPlace, Louisiana. Munford represented that the installment would be used to construct a smoker.

27.     On July 12, 2016, Munford sent an e-mail to Zeringue, Moreland, and others, giving an update on the progress of Forest Free Range's business, stating in part that Forest Free Range would "produce, sell, and distribute Wayne Jacobs sausage as part of our Two Run Farm sales program to the same restaurant wholesale customers who appreciate local flavor!" Moreland continued:

> As we expand the customer base for [Wayne Jacobs Smoked Sausage], we hope to continue to build on the operational capacity of Springfield Slaughterhouse and bringing our plant under USDA inspection will be part of that expansion. This will allow us to sell [Wayne Jacobs Smoked Sausage] mail order and wholesale through national distribution chains or locally through USDA meat product distributors.

28.     On or about July 21, 2016, WJ Distribution paid its second installment of $16,000 toward the Forest Free Range equity purchase.  Munford received the check personally at Wayne Jacob's Smokehouse and Restaurant in LaPlace, Louisiana.

29.     Throughout Autumn 2016, Zeringue and Moreland worked with Munford and staff at Forest Free Range to design labels for packaging and marketing of Wayne Jacob's Smokehouse products that complied with USDA regulations.

30.     On or about September 26, 2016, Munford and all other staff at Forest Free Range signed nondisclosure agreements, agreeing not to disclose to third parties intellectual property consisting in its brand name, logo, and recipe for the production of Wayne Jacob's Smokehouse products, as well as non-competition agreements, agreeing not to compete against Forest Free Range during their employment by Forest Free Range or for two years after termination of their employment.

31.     On or about September 21, 2016, WJ Distribution paid its third installment of $32,000 toward the Forest Free Range equity purchase.  Munford received the check personally at Wayne Jacob's Smokehouse and Restaurant in LaPlace, Louisiana.

32.     In or about October 2016, Munford, on behalf of Forest Free Range, signed a Production Contract (the "Production Contract") for "[t]he purpose of . . . establish[ing] an independent contractor agreement for meat processing and sausage manufacture."  Through the Production Contract, Forest Free Range agreed to "procure ingredients (other than the spice blend) and provide Louisiana state inspected meat processing and packing services for production of three meat products (smoked sausage, andouille, and tasso) under the Wayne Jacobs brand, according to the recipe agreed upon by the two parties."  The term of the Production Contract was one year, from April 1, 2017, to March 31, 2018.

33.     On or about December 9, 2016, WJ Distribution paid its fourth installment of $80,000 toward the Forest Free Range equity purchase.  Munford received the check personally at Wayne Jacob's Smokehouse and Restaurant in LaPlace, Louisiana.

34.     On or before December 29, 2016, Moreland paid on behalf of WJ Distribution its sixth and final installment of $160K toward the Forest Free Range equity purchase.  Munford received the check personally at Wayne Jacob's Smokehouse and Restaurant in LaPlace, Louisiana.  After paying the final installment, WJ Distribution owned a 20% equity interest in Forest Free Range.

35.     Shortly before or immediately after the final installment by WJ Distribution, Munford unilaterally sold all of his delivery trucks and contracted Perrone and Sons, LLC ("Perrone"), a foodservice distributor located in Metairie, Louisiana, to handle all of the distribution for Forest Free Range.  Munford did not inform Zeringue and/or Moreland of his actions until after he cashed the final installment check, the trucks were sold, and the agreement with Perrone was signed.

36.     In or about January 2017, Munford completed the construction of the smoker.  Approximately two months before the completion of the smoker, Munford unilaterally decided that he would cease providing and delivering grass-fed, sustainable lamb, beef, and wild boar to Baton Rouge-, Northshore-, and New Orleans-area restaurants, focusing instead on making sausage marketed under the trade name "Two Run Farm" and dog treats.  Munford's decision significantly (if not entirely) depleted the value of the clientele list that Munford had touted to Zeringue and Moreland to induce them to invest in Forest Free Range.

37.     But then on April 3, 2017, Munford sent an e-mail to Zeringue, Moreland, and the other equity holders of Forest Free Range, informing them that he had changed the name of his

products to "Charlie's Smoked Sausage of Wild Boar and Pork," abandoning the trade name "Two Run Farm."  Munford also informed equity holders that Forest Free Range was abandoning completely its "old, proven revenue source in the restaurant business" to "turn our efforts completely toward our future strategy."  That decision "greatly increased our 'rate of burn' and we have now reached the point where we have begun layoffs to downsize our payroll to match current income."

38.     In the April 3, 2017 e-mail, Munford informed equity holders that the Springfield slaughterhouse would not be USDA certified.  Without USDA certification, Forest Free Range would not be able to sell Wayne Jacob's Smokehouse products outside the State of Louisiana and could not sell online or to large grocery stores, such as Whole Foods.

39.     Munford's April 3, 2017 e-mail also stated that he had contracted with a "co-packer"[1] in Mississippi to manufacture and distribute Charlie's sausage.

40.     Munford's April 3, 2017 e-mail also stated that he had been negotiating with Valmiki Capital Management LP, a New York-based investment manager about a new equity investment in Forest Free Range.

41.     In spite of all of the news contained in Munford's April 3, 2017 e-mail, he nevertheless valued Forest Free Range at "$2.2M–$2.4M."

42.     After a year and a half of construction, product development, testing, and packaging, Munford suggested to Zeringue and Moreland that WJ Distribution find a its own co-packer to produce and distribute Wayne Jacobs Smokehouse products, and announced shortly thereafter that he was closing the Springfield slaughterhouse—approximately two months prior to

---

[1]      A "co-packer" is a company that manufactures and packages food or other products for their client.  To market and distribute, a co-packer works under contract with the hiring company to manufacture food as though the products were manufactured directly by the hiring company.

the expiration of the Production Contract—due to fines levied against the slaughterhouse facility

by the State of Louisiana for regulatory violations.  Once the Springfield slaughterhouse closed,

Forest Free Range could not produce Wayne Jacobs Smokehouse products.

43.     Munford and the staff at Forest Free Range did not get a final Wayne Jacob's

Smokehouse product for distribution until approximately September 2017.  Afterward, two batches

of Wayne Jacob's Smokehouse products were successfully produced and distributed to Theo's

Pizza, all five BreauxMart grocery stores, and Dorignac's in the New Orleans area.

44.     In October 2017, Munford incurred on behalf of Forest Free Range, $250,000 in

mezzanine debt.

45.     On December 6, 2017, Munford sent via e-mail an update as to the status of Forest

Free Range's business.  Munford announced that he had been negotiating with real estate agents

such as Latter & Blum and auction companies including Henderson Auction and Guinn Auction

Co. to sell the physical assets of the business, but planned to continue to move forward with a co-

packer manufacturing Charlie's Sausage.  Munford stated that "I now think it was a mistake to

take on the mezzanine debt in October," but his plan to sell the assets of the business "should

[allow the business] to pay down 100% of our liabilities by May 1st [2018]."  Munford stated that

he "would like to step down as CEO from Charlie's Sausage, while remaining majority owner,"

because "with a new family my income requirements are higher than is practical for the venture at

this stage."  His plan for the business envisioned equity holders to "cut back spending, deleverage,

and be patient," while the business "prov[es] the product in the marketplace for long enough to

create a demand for a buyout."

46.     In an e-mail dated January 2, 2018, Munford advised Zeringue and Moreland that,

because the plant at the Springfield slaughterhouse was closed, Forest Free Range would be able

to store the Wayne Jacob's Slaughterhouse products that had been made until January 15, 2018, and then the cooler would be turned off. He advised, however, that "[t]he product may be too short-dated to sell at this time [and] [i]f that's true, please donate it to a charity and have them pick it up from us, or pick it up yourselves, [o]therwise we will discard it." Munford reiterated his suggestion that WJ Distribution find and use a co-packer to manufacture its products.

47. On January 3, 2018, Zeringue and Moreland requested via e-mail that Munford provide "a detailed accounting of what was sold on our behalf to whom and what the checks we received were for." On January 4, 2018, Angela Fix, an employee of Forest Free Range, produced via e-mail a purported "sales report for Wayne Jacobs products sold by Forest Free Range, LLC."

48. On January 2, 2018, Zeringue and Moreland requested "a detailed accounting of what was sold on our behalf to whom and what the checks we received were for."

49. On January 10, 2018, Zeringue and Moreland again requested "a complete accounting of assets to us by the close of business on Monday, January 15, 2018 which includes asset valuation, if any new owners have been added and salaries paid since our initial investment." Munford sent via e-mail only an incomplete list of checks that had been written on Forest Free Range's account.

50. On March 14, 2018, Zeringue and Moreland again asked for a complete accounting to "include all expenses including salaries, marketing expenses and equipment, vehicles and real estate and a detailed understanding of the amount and time of the Iberia Bank debt as well as that of Mr. Molpus loan to you," and adding that "[w]e need this complete accounting to understand how a company that your provided paperwork valuing the at [sic] $1,600,000.00 went to zero in less than 16 months."

51.     On March 14, 2018, Munford sent an e-mail to Zeringue, Moreland and other interested parties in Forest Free Range, stating that the business "was out of rope."  Munford stated that, on March 15, 2018, "with the help of Taylor Stone my attorney, [he would] be notifying Iberia Bank of the situation, and trying to negotiate an end to Forest Free Range and arranging for dissolution of the assets."  Munford stated that "I know there will be a lot of questions about how exactly this happened."

52.     On March 16, 2018, Zeringue, Moreland, and the other equity holders of Free Range received a letter via e-mail from Taylor C. Stone, an attorney purporting to represent Forest Free Range, informing the equity holders that Munford, "in his capacity as Manager of the LLC, has determined that the best course of action to protect the LLC, as well as its various ownership interests, investors, and creditors, is to dissolve the LLC so that its assets may be liquidated and distributed in kind."

53.     To date, Munford has refused to provide a complete accounting of the business since the date of the signing of the Equity Agreement, instead writing through his attorney on March 16, 2018, that although he "has no intention of withholding any LLC information from the owners," he nevertheless requires Zeringue and Moreland to "identify with as much specificity as possible the particular LLC records that are sought for review" and "the preferred format for production of any records sought."

### The Corporate Defendants Operated as a Single Enterprise

54.     Each of the corporate Defendants is an instrumentality or adjunct of each other, being merely conduits of each other under Louisiana's "single business doctrine" and at all times relevant to this Action, Munford controlled Forest Free Range and all of the other corporate Defendants.

55.     Munford is the sole officer/manager of each entity and has unified administrative control of all of the corporate Defendants, causing excessive fragmentation of a single enterprise into separate entities.

56.     The corporate Defendants are organized and controlled in such a way that any one is an adjunct of the others and is considered to be the business conduit or alter ego of the others.

57.     Upon information and belief, Forest Free Range, Louisiana FFR, Patterson Slaughterhouse, and Springfield Slaughterhouse have or have had common employees who render the services of one entity on behalf of its affiliated entity as well as a centralized accounting with undocumented transfers of funds between one another.

58.     Upon information and belief, Louisiana FFR, Patterson Slaughterhouse, and Springfield Slaughterhouse, and Munford  Consulting, although not signatories of the Operating Agreement, benefited from the promises and inducements by Munford to Zeringue and Moreland, as well as by the Operating Agreement, Production Agreement, and Equity Agreement, as Munford diverted funds from Forest Free Range to pay salaries, expenses, and losses of the affiliated entities or used funds from Forest Free Range to organize and fund the affiliated entity(ies).

59.     Upon information and belief, Munford formed and undercapitalized the corporate Defendants with the intention of sheltering himself and the corporate Defendants from any liability in connection with the promises, inducements, actions, and inactions of Munford regarding the investment of Zeringue and Moreland in Forest Free Range and the resultant causes of action described herein.

60.     Because the corporate Defendants constitute a single business enterprise, have integrated their resources to achieve a common business purpose, and do not operate as separate

entities, each affiliated corporate Defendant should be held liable for all claims against Forest Free Range by Plaintiffs.

### The Corporate Defendants Are Alter Egos of Munford

61.     Munford is the sole officer/manager of each Corporate Defendant such that his administrative control has created such unity that the separateness between Munford and the Corporate Defendants has ceased making the Corporate Defendants alter egos of Munford.

62.     At all times, Munford exercised complete control over all Corporate Defendants and acted through them to deceive and defraud Zeringue and Moreland into investing in Forest Free Range.

63.     All named Defendants are liable for each Count alleged herein and owe damages under the Louisiana's alter ego doctrine.

64.      As a result of the conduct described herein, Plaintiffs has been damaged in an amount to be proven at trial.

## CAUSES OF ACTION

## COUNT I:  VIOLATION OF RULE 10-B SECURITIES EXCHANGE ACT OF 1934, 17 C.F.R. § 240.10b-5

65.     Plaintiffs repeat and re-allege each and every allegation previously set forth as if plead herein *in extenso*.

66.     On January 27, 2016, through electronic mail transmission, to incentivize Zeringue and Moreland to invest in Forest Free Range, Munford provided Zeringue and Moreland with net earnings projections alleged to have been produced by his "financial team" that envisioned (i) Wayne Jacobs Smokehouse's 2018 gross sales of products manufactured by Forest Free Range would range between $156,000 to $300,000; (ii) gross sales of meats sold under the "Two Run

Farms" tradename of Forest Free Range would range between $1.5 million and $2 million; and (ii) Forest Free Range's 2018 net income would range between $214,000 and $530,000.

67.     On February 1, 2016, through electronic mail transmission, Munford pitched the investment in Forest Free Range to Zeringue and Moreland by indicating that he had consulted with Dick Molpus, Jimmy Josey, and CFO Terrell Winstead of Molpus Woodlands Investment group who valued Forest Free Range at $1.2 million without additional equity investment and $1.6 million with $400,000 of additional equity investment.

69.     Through an electronic transmission, Munford made personal promises to "honor any commitment made to produce and promote Wayne Jacobs sausage."

69.     Relying upon Munford's representations, Zeringue and Moreland organized WJ Distribution, executed the Equity Agreement on March 2, 2015 and paid its first installment of $32,000 for the purposes of ultimately acquiring a 20% equity interest in Forest Free Range d/b/a Two Run Farm.

70.     On July 12, 2016, through electronic mail transmission, Munford informed Zeringue and Moreland that Forest Free Range would produce, sell and distribute Wayne Jacob's sausage as part of the Two Run Farms sales program to the same restaurant wholesale customers. Munford enthusiastically reinforced his aspirations to expand the customer base and build on the operational capacity of Springfield Slaughterhouse by bringing the plant under USDA inspection that would open the door to mail order and wholesale through national distribution chains and locally though USDA meat product distributors.

71.     Zeringue and Moreland continued to rely heavily upon all information Munford provided in the electronic mail transmissions when they made the decision on behalf of WJ

Distribution to continue to provide payments under the Equity Agreement to acquire a 20% equity interest in Forest Free Range.

72.     Shortly before or immediately after WJ Distribution's final payment on December 29, 2016, Munford made the unilateral decision to sell all of his delivery trucks (which were an integral cog in Forest Free Range's existing delivery infrastructure) and contracted Perrone to handle all of the distribution for Forest Free Range.  All of this was done without notifying Zeringue and/or Moreland and is in direct conflict with Munford's numerous e-mails stating that Forest Free Range would handle all distribution itself.

73.     In or about March of 2017 (approximately two months after the completion of the smoker), Munford once again unilaterally changed the agreed-upon business plan by ceasing to provide and deliver grass-fed, sustainable lamb, beef and wild boar to Baton Rouge, Northshore and New Orleans-area restaurants, focusing instead on making sausage marketed under the trade name "Two Run Farm" and dog treats.  That decision significantly (if not completely) depleted the value of the clientele list Munford had represented as being the restaurant and grocery contacts he was planning on using for marketing and delivery as set forth in his e-mails.

74.     On April 3, 2017, Munford, through electronic mail transmission, informed Zeringue and Moreland that he was abandoning the trade name "Two Run Farm" and changing the name of his products to "Charlie's Smoked Sausage of Wild Boar and Pork."  Munford also indicated that the Springfield slaughterhouse would not be USDA certified. That decision directly conflicted with the July 12, 2016 e-mail in which Munford stated that he would continue to build on the operational capacity of Springfield Slaughterhouse and bring the plant under USDA inspection.

75.     Throughout the entire time period, Munford and the staff at Forrest Free Range facilitated only a limited batch of one Wayne Jacob's Smokehouse product, smoked sausage, and failed to manufacture andouille or tasso as had been part of the plan represented to Plaintiffs.

76.     The timing in which Munford began to dismantle methodically the entire business plan is no coincidence.  Munford undoubtedly waited until the final installment was paid before he began to torpedo every avenue at his disposal his commitment to facilitate and distribute Wayne Smokehouse products.  It is now clear that Munford provided attractive, yet misleading, net earnings projections as he had no intention of following through with (i) maintaining Forest Free Range's delivery infrastructure; (ii) using Forest Free Range d/b/a/ Two Run Farm's clientele lists for Baton Rouge-, New Orleans-, and Northshore-based restaurants and retail markets; and (iii) obtaining USDA certification for Springfield Slaughterhouse to use Forest Free Range d/b/a Two Run Farms as a vehicle to market WJ Distribution's products.

77.     The statements and promises Munford made through electronic mail transmissions were fraudulent, misleading, and part of a scheme to convince Zeringue and Moreland to invest $320,000 on behalf of WJ Distribution in Forest Free Range to facilitate and distribute Smokehouse products when, in fact, Munford planned to and did allocate the funds to benefit himself, his family, and/or his other closely held businesses.

78.     Munford systematically used electronic mail transmissions as an instrumentality of interstate commerce to provide materially false and  misleading statements in order to deceive Zeringue and Moreland into believing, amongst other things, that:

a.   Forest Free Range was financially stable;

b.   Forest Free Range's 2018 net income would range between $214,000 and $530,000;

c. Two Run Farms was a registered trade name of Forest Free Range and WJ Distribution's products would be marketed by using Two Runs Farm's client lists and good will;

d. Springfield Slaughterhouse was "fast tracked" to USDA approval; and

e. Munford, through Forest Free Range, intended to and had the ability to facilitate, market, and distribute Wayne Jacob's Smokehouse Products through its existing delivery infrastructure and restaurant/grocery contacts for marketing and delivering products.

79. All of Munford's misrepresentation were employed to defraud WJ Distribution into investing $320,000.

80. Munford's actions constitute as a violation of SEC Rule 10b-5.

81. As a result of Munford's misrepresentations and omissions by means of interstate commerce, Plaintiffs have suffered injury and are entitled to all damages and relief allowed by law.

82. All named Defendants owe damages to Plaintiffs under Louisiana's "single business doctrine" and/or alter ego doctrine for damages and relief allowed by law for violation of SEC Rule 10b-5.

## COUNT II: BREACH OF PRODUCTION CONTRACT

83. Plaintiffs repeat and re-allege each and every allegation previously set forth as if plead herein *in extenso*.

84. Munford completely controlled Forest Free Range d/b/a Two Run Farm.

85. Munford breached the Production Contract when he caused Springfield Slaughterhouse to shutter its doors and cease production approximately two months prior to the expiration of the Production Contract.

86.     Munford breached the Production Contract when he caused Forest Free Range to fail to produce Wayne Jacobs Smokehouse products in accordance with the Production Contract.

87.     As a result of the breach of the Production Contract, Plaintiffs have been damaged in an amount to be proven at trial.

88.     All named Defendants owe damages to Plaintiffs under Louisiana's "single business doctrine" and/or alter-ego doctrine for breach of the Production Contract.

## COUNT III:  BREACH OF EQUITY AGREEMENT

89.     Plaintiffs repeat and re-allege each and every allegation previously set forth as if plead herein *in extenso*.

90.     Munford completely controlled Forest Free Range d/b/a Two Run Farm.

91.     Munford breached the Equity Agreement when he solicited and accepted payment of $320,000 from WJ Distribution and then immediately and unilaterally changed the nature of the business in which WJ Distribution had invested, including disposing of assets belonging to Forest Free Range, including, but not limited to, distribution infrastructure and customer lists, thereby significantly diluting, if not destroying, the value of the company.

92.     As a result of the breach of the Operating Agreement, Plaintiffs have been damaged in an amount to be proven at trial.

93.     All named Defendants owe damages to Plaintiffs under Louisiana's "single business doctrine" and/or alter-ego doctrine for breach of the Operating Agreement.

## COUNT IV: VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES ACT
## LA. REV. STAT. § 51:1401, ET SEQ.

94.     Plaintiffs repeat and re-allege each and every allegation previously set forth as if plead herein *in extenso*.

95.     Munford, in the course of his role as Manager/Member of Forest Free Range, provided deceptive evaluations of Forest Free Range's financial conditions, net income projections, delivery infrastructure, grocery/restaurant contacts for marketing and delivering products, and that a working slaughterhouse was fast-tracked for December 2016 USDA certification, knowing that Zeringue and Moreland would rely on that deceptive information to enter into the Equity Agreement.

96.     After entering into the Equity Agreement and expending its own resources without reimbursement, WJ Distribution learned Forest Free Range was undercapitalized from the beginning of its incorporation.  In reality, to date, Munford has used or allocated most of the funds to benefit himself, his family, and/or the other named corporate Defendants.

97.     Munford initiated and led the negotiations that led to the execution of the Equity Agreement.

98.     Forest Free Range was used by Munford solely to capitalize on the Equity Agreement and to accept the $320,000 for his benefit, while avoiding any financial liability for the Slaughterhouse and sheltering the other Munford-related entities (Louisiana FFR, Patterson Slaughterhouse, Springfield Slaughterhouse and Munford Consulting) and Munford, individually, from financial liability therefor.

99.     Munford's actions constitute deception, misrepresentation, and/or fraud in violation of Louisiana's Unfair Trade Practices Act, La. Rev. Stat. § 51:1401, et seq. ("LUPTA").

100.     Munford is liable to Plaintiff under LUTPA and Plaintiffs are entitled to three times the actual damages sustained and its attorneys' fees and costs in bringing this claim.

101.     All named Defendants owe damages to Plaintiffs under Louisiana's "single business doctrine" and/or alter-ego doctrine for violations of LUPTA.

## COUNT V:  UNJUST ENRICHMENT

102.    Plaintiffs repeat and re-allege each and every allegation previously set forth as if plead herein *in extenso*.

103.    Upon information and belief, Munford willfully and knowingly took unauthorized possession of and asserted ownership and control over the proceeds, funds, and profits of Forest Free Range and diverted those funds for his own personal benefit or for the benefit of friends, family or other corporate Defendants and to the detriment of other equity holders of Forest Free Range.

104.    Munford received benefits from the Equity Agreement and Forest Free Range without facilitating or distributing WJ Distribution's smoked products and has been enriched without corresponding compensation or benefit to WJ Distribution.

105.    No legal cause exists to justify the enrichment of Forest Free Range at WJ Distribution's expense.

106.    In the event it is determined that no privity exists between WJ Distribution and Defendants Munford and Forest Free Range, and no other legal remedy against those Defendants is available to WJ Distribution, WJ Distribution hereby seeks recovery from Defendants Munford and Forest Free Range under the theory of unjust enrichment.

107.    All named Defendants owe damages to Plaintiffs under Louisiana's "single business doctrine" and/or alter-ego doctrine for unjust enrichment.

## COUNT VI:  FRAUDULENT MISREPRESENTATION

108.    Plaintiffs repeat and re-allege each and every allegation previously set forth as if plead herein *in extenso*.

109.    Munford has improperly used and operated Forest Free Range as an instrumentality, and has engaged in improper conduct.

110.    Munford made false and misleading statements to Zeringue and Moreland to induce them to invest in Forest Free Range, an alter-ego of Munford, to manufacture and distribute Wayne Jacobs Smokehouse products.  Those representations included, but are not limited to:

a.    Intentionally misrepresenting to that Two Run Farms was a registered trade name of Forest Free Range and that the two were interchangeable entities acting as a single business enterprise with an appraised value of $1.6 million;

b.    Intentionally misrepresenting that Forest Free Range was adequately capitalized such that Forest Free Range could facilitate and distribute WJSD smoked products;

c.    Intentionally misrepresenting that Munford had in place an existing delivery infrastructure equipped with five delivery trucks operating six days a week and servicing over 200 clients in the New Orleans, Baton Rouge and Northshore areas;

d.    Intentionally misrepresenting that upon completion of the smoker, Munford would continue to provide local grass fed beef, lamb, and wild boar to clientele; and

e.    Intentionally misrepresenting that the Slaughterhouse in Springfield Louisiana was "fast-tracked" to becoming USDA certified.

111.    Munford made and/or was knowingly responsible for making these misrepresentations to WJ Distribution and knew or should have known they were false at the time they were made.

112.    Munford made such misrepresentations and/or omissions with the intent that Zeringue and Moreland would rely upon them to its detriment.

113.    In reasonable reliance on the misrepresentations and/or omissions by Munfrod, Zeringue and Moreland, on behalf of WJ Distribution, entered into the Equity Agreement and, as a result, suffered harm.

114.    As a proximate cause of the foregoing, Plaintiffs have been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence.

115.     All named Defendants owe damages to Plaintiffs under Louisiana's "single business doctrine" and/or alter-ego doctrine for fraudulent misrepresentation.

## COUNT VII:  NEGLIGENT MISREPRESENTATION

116.     Plaintiffs repeat and re-allege each and every allegation previously set forth as if plead herein *in extenso*.

117.     Since 2010, Zeringue and Moreland had ordered food products weekly from Forest Free Range d/b/a Two Run Farm through its representative, Munford, giving rise to a preexisting business relationship; therefore, Munford had a duty to disclose correct information as he knew that Zeringue and Moreland would rely on the information provided when he solicited the sale of a 20% equity interest in Forest Free Range.

118.     Munford breached this duty when he misrepresented, amongst other things, that:

a.   Two Run Farm was a registered trade name of Forest Free Range and that the two were interchangeable entities acting as a single business enterprise with an appraised value of $1.6 million;

b.   Forest Free Range was adequately capitalized such that Forest Free Range could facilitate and distribute Wayne Jacobs Smokehouse products;

c.   Munford had in place an existing delivery infrastructure equipped with five delivery trucks operating six days a week and servicing over 200 clients in the New Orleans, Baton Rouge and Northshore areas;

d.   upon completion of the smoker, Munford would continue to provide local grass fed beef, lamb, and wild boar to clientele; and

e.   the Slaughterhouse in Springfield Louisiana was "fast-tracked" to becoming USDA certified.

119.     Munford's misrepresentations and omissions directly influenced Zeringue and Moreland's decision to enter into the Equity Agreement to purchase a 20% equity interest in Forest Free Range for $320,000.

120.   As a proximate cause of the foregoing, Plaintiffs have been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence. Furthermore, Zeringue and Moreland have suffered the loss of business opportunities as a result of entering into the Equity Agreement and Production Contract.

## JURY TRIAL DEMAND

121.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore Plaintiffs pray that Judgment be entered in its favor and against Defendants, for past, present, and future damages and losses pursuant to the causes of action alleged herein, as well as any additional damages, including, but not limited to, damage to reputation, loss of good will, treble damages, loss of business opportunities, attorneys' fees, costs, expenses, interest, and such other and further relief as the Court deems just and proper.

LUGENBUHL, WHEATON, PECK,
       RANKIN & HUBBARD

_/s/ Ashley L. Belleau_
ASHLEY L. Belleau (LA #14077)
MEREDITH S. GRABILL (LA #35484)
ARMAND E. SAMUELS (LA #33351)
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
E-mail:  abelleau@lawla.com; mgrabill@lawla.com
asamuels@lawla.com

_Counsel for Plaintiffs_

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| **JARREN ZERINGUE, MATTHEW MORELAND and WAYNE JACOB'S SMOKEHOUSE DISTRIBUTION, LLC,** | * | |
| | * | |
| | * | |
| | * | **CIVIL ACTION NO. _____** |
| **Plaintiffs,** | * | |
| | * | |
| **VERSUS** | * | **SECTION _____** |
| | * | |
| **CHARLES MUNFORD, FOREST FREE RANGE, LLC, d/b/a Charlie's Sausage and/or Two Run Farm, LOUISIANA FFR, LLC, PATTERSON SLAUGHTER HOUSE LLC, SPRINGFIELD SLAUGHTER HOUSE, LLC, and MUNFORD CONSULTING, LLC,** | * | **MAGISTRATE _____** |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

BEFORE ME, the undersigned authority, personally appeared

MATTHEW MORELAND

who, upon being duly sworn, deposed:

26

That he is the Plaintiff in the above and foregoing Complaint, individually and on behalf of Wayne Jacobs Smokehouse Distribution, LLC; that all of the allegations of fact made in the Complaint are true, except those allegations expressly made on information and belief; and that as to those, affiant believes them to be true.

_____
                                         MATTHEW MORELAND

**SWORN TO AND SUBSCRIBED**

**BEFORE ME THIS** _15th_ **DAY**

**OF JUNE, 2018.**

_____
**NOTARY PUBLIC**

Meredith Sue Grabill
Notary Public
State of Louisiana
Bar No. 35484
My commission is for life

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| **JARREN ZERINGUE, MATTHEW MORELAND and WAYNE JACOB'S SMOKEHOUSE DISTRIBUTION, LLC,** | * * * * | |
| | * | **CIVIL ACTION NO. _____** |
| **Plaintiffs,** | * * | |
| **VERSUS** | * * | **SECTION _____** |
| **CHARLES MUNFORD, FOREST FREE RANGE, LLC, d/b/a Charlie's Sausage and/or Two Run Farm, LOUISIANA FFR, LLC, PATTERSON SLAUGHTER HOUSE LLC, SPRINGFIELD SLAUGHTER HOUSE, LLC, and MUNFORD CONSULTING, LLC,** | * * * * * * * * * | **MAGISTRATE _____** |
| **Defendants.** | * * | |
| * * * * * * * * * * * * * * * * | * | |

## VERIFICATION

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally appeared

JARRED ZERINGUE

who, upon being duly sworn, deposed:

28

That he is the Plaintiff in the above and foregoing Complaint, individually and on behalf of Wayne Jacobs Smokehouse Distribution, LLC; that all of the allegations of fact made in the Complaint are true, except those allegations expressly made on information and belief; and that as to those, affiant believes them to be true.

_____
JARRED ZERINGUE

**SWORN TO AND SUBSCRIBED**

**BEFORE ME THIS** _15th_ **DAY**

**OF JUNE, 2018.**

_____
**NOTARY PUBLIC**

Meredith Sue Grabill
Notary Public
State of Louisiana
Bar No. 35484
My commission is for life